IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN BRADLEY POWELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 23-cv-237-NJR |
| ) | |
| ) | |
| FAISAL VAKIL AHMED, NURSE ) | |
| BROWN, MS. MILLS, NURSE KELLEY, ) | |
| and MS. BRAZZELL, ) | |
| ) | |
| Defendants. ) | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Steven Bradley Powell, who at the time he filed his Complaint was an inmate of the Federal Bureau of Prisons ("BOP") incarcerated at Federal Correctional Institution - Greenville ("FCI - Greenville"), brings this action for deprivations of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). In the Complaint (Doc. 1), Powell alleges that Defendants denied him adequate medical care for several medical conditions.[1]

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be

---

[1] In addition to his Complaint, Powell filed two supplements containing additional exhibits (Docs. 6 and 9).

1

granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Powell makes the following allegations: On December 17, 2020, Powell arrived at Greenville and reported to Nurse Brown during his initial screening that he suffered from bleeding in his rectum; he had pain in his left knee, left hip, and lower back; he needed a left shoulder replacement; and he had blisters from a nickel allergy, which caused re-occurring staph infections (Doc. 1, p. 4). He subsequently saw Nurse Brown on January 4, 11, 15, 17, 2021, and February 11, 2021, but Nurse Brown would not send him to the emergency room for an emergency colonoscopy despite Powell suffering non-stop bleeding (*Id*. at p. 4). He informed staff that his grandfather died of colon cancer and his father was also suffering from tumors in his colon (*Id*.). On March 14, 2021, he again spoke to Nurse Brown and was informed that his bleeding was not an emergency (*Id*.). On that same date, he brought Nurse Brown and Physician Assistant ("PA") Mills a bag of bloody toilet tissue to demonstrate the amount of his continued bleeding (*Id*. at pp. 4, 7). He was merely provided with more toilet paper (*Id*. at p. 5).

On July 27, 2021, Powell finally saw Dr. Kim at a local hospital for a colonoscopy (*Id*. at p. 4). He was diagnosed with pan colitis and was informed his entire colon was infected and that he could suffer permanent damage due to the delay in obtaining medical care (*Id*.).

Powell also reported to Nurse Brown sores and infected blisters caused by a nickel allergy (*Id*. at p. 4). Despite requesting care, he was never referred to a dermatologist or allergist (*Id*.). Nurse Brown provided antibiotics and steroids, but Powell alleges that the fifteen rounds of steroid treatments failed to control his allergic reactions (*Id*. at p. 5). He

requested metal rods, which were made of nickel and implanted during a previous back fusion surgery, be removed from his body, but his request was ignored (*Id.* at pp. 5, 8). Instead, PA Mills repeated previously provided treatment, including ordering a new neurosurgery consult, and failed to provide Powell with his previous operative report, allergy diagnosis report, and hardware inventory (*Id.* at p. 8). The documents were necessary for a consult and the specialist could not diagnose Powell without the documents (*Id.*).

Powell was previously recommended for left shoulder replacement surgery and submitted the request, but PA Mills failed to re-submit the order for surgery, which delayed his surgical consultation (*Id.* at p. 8). Although Mills felt grinding in Powell's left knee, she also refused him an MRI for his knee (*Id.*). She further denied care for his left hip (*Id.*). She refused him a stronger pain medication, instead prescribing him mental health medication (*Id.* at pp. 8, 10). Mills informed Powell that he had a number of injuries which needed treatment, but he could only have one injury treated at a time. PA Mills informed Powell that his other injuries, like his colitis, would have to wait (*Id.* at p. 9). Powell alleges this delay caused additional injury (*Id.*). He alleges that Mills only prescribed Ibuprofen, which was improper for someone with colitis issues (*Id.* at p. 10). He also requested pain medication from Nurse Brown. He wanted Gabapentin but was prescribed a lesser pain medication (*Id.* at p. 10). Despite repeated requests for better pain medication, Nurse Brown refused to prescribe or recommend another pain medication and would not permit Powell to see PA Mills (*Id.* at p. 6). Powell alleges that Nurse Brown and Mills denied and delayed access to proper pain medication out of retaliation for the numerous grievances Powell wrote about his medical needs (*Id.* at p. 6, 9, 10).

Powell also informed Dr. Ahmed of his conditions during his initial screening (*Id*. at p. 12). He informed Dr. Ahmed of his need to have the nickel implant removed from his lower back (*Id*.). Powell also showed Dr. Ahmed the bags of bloody toilet paper (*Id*.). Dr. Ahmed also denied his request for colonoscopy or effective medication for his colitis and pain (*Id*.). He also refused Powell's request for Gabapentin, despite Powell repeatedly reporting that the other pain medications and mental health medications were not working to control his pain (*Id*.). Dr. Ahmed also prescribed a fiber medication that exacerbated Powell's diarrhea and colitis (*Id*.). Despite knowledge of Powell's nickel allergy and a recommendation to remove the nickel implants, Dr. Ahmed refused to provide any additional treatment (*Id*. at pp. 15-16). Dr. Ahmed provided over 15 rounds of antibiotics and steroid medications to combat the recurrent staph infections caused by the sores, but the medications were ineffective (*Id*. at p. 16). After filing an emergency grievance requesting an emergency colonoscopy, his pain medications were reduced in retaliation for the grievance (*Id*. at p. 16).

As to Nurse Kelley, Powell alleges that his medical records from intake clearly noted his conditions which informed Nurse Kelley of his untreated medical conditions (*Id*. at p. 17). He also informed Nurse Kelley of his grievances seeking treatment and was seen by her on several occasions. He showed her his blisters and staph infections and informed her of the excruciating pain (*Id*.). He also showed Nurse Kelley the bags of bloody toilet paper, but Nurse Kelley failed to provide him with treatment and barred him from seeking PA Mills (*Id*.). The only care Nurse Kelley provided was to give him additional toilet paper for his bleeding (*Id*.). Nurse Kelley also continued with the steroids and antibiotics for his staph infections, despite the medications being ineffective in treating his condition (*Id*.). He also

informed Nurse Kelley of issues with his left knee, but she did not provide any care (*Id*. at p. 19).

As to Ms. Brazzell, Powell alleges that sometime in March or April 2021, he informed Associate Warden Cheeks about his bleeding issues and Cheeks asked Brazzell to speak to Powell about his concerns (*Id*. at p. 20). Powell requested emergency medical treatment at a hospital and Brazzell informed Powell that he had a pending appointment (*Id*. at p. 20). Although Powell believed the appointment was with an outside specialist, the appointment Brazzell referred to was with Nurse Kelley (*Id*.). He did not see a specialist until three months later. Powell believed that he needed emergency medical care and no one in the medical department provided him that care. He alleges that because Brazzell managed the medical department she failed to properly supervise or correct her subordinates (*Id*.). Brazzell also directly refused Powell's requests for an emergency colonoscopy and barred his access to outside specialists (*Id*.). She also refused him proper medications and signed the approval for extra toilet paper (*Id*.). She was aware of Powell's shoulder, hip, knee, and back pain, as well as his skin infections, yet delayed treatment. He informed Brazzell on numerous occasions of his pain and the fact that medical staff would only provide him with mental health medication, but Brazzell refused to correct the care provided or provide him with additional care (*Id*. at p. 21).

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

5

> **Count 1:** First Amendment retaliation claim against Defendants for retaliating against Powell for filing grievances.
>
> **Count 2:** Eighth Amendment claim against Defendants for failing to provide Powell with proper treatment for his serious medical needs.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard**.[2]

### *Bivens* Claims

Powell filed this lawsuit pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). There is no Congressional authority to award damages to "plaintiffs whose constitutional rights [have been] violated by agents of the Federal Government." *Ziglar v. Abbasi,* 582 U.S. 120, 130 (2017). In *Bivens*, however, the Supreme Court recognized an implied action for damages to compensate persons injured by federal officers who violated the Fourth Amendment's prohibition against unreasonable searches and seizures. *Id.* at 130-31. Since this decision, the Supreme Court has recognized only two other instances in which an implied damages remedy under *Bivens* is available for a constitutional deprivation—a Fifth Amendment sex discrimination claim, and an Eighth Amendment claim for denial of medical care for a serious medical condition. *See Davis v. Passman,* 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). Recent cases have declined to extend a *Bivens* remedy to any other contexts and stated that further expansion of *Bivens* is a "disfavored judicial activity." *Ziglar,* 582 U.S.

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

at 135 (declining to extend *Bivens* to Fifth Amendment due process/conditions of confinement/abuse and equal protection claims and to Fourth/Fifth Amendment strip search claims); *Egbert v. Boule*, 142 S. Ct. 1793 (2022) (no *Bivens* remedy for First Amendment retaliation claim or Fourth Amendment excessive force claim).

When presented with a proposed *Bivens* claim, a district court must undertake a two-step inquiry. *See Hernandez v. Mesa,* 140 S. Ct. 735, 741 (2020). First, a court asks whether the case presents a new *Bivens* context, *i.e.*, whether it is meaningfully different from the three cases in which the Supreme Court previously implied a damages action. *Ziglar,* 582 U.S. at 139-140. Second, if a claim arises in a new context, the court must consider whether any "special factors" indicate that the Judiciary is at least arguably less equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id*. at 136. If even one reason gives the court pause before extending *Bivens* into a new context, the court cannot recognize a *Bivens* remedy. *Hernandez,* 140 S. Ct. at 743.

**Count 1**

Powell's Complaint alleges that Defendants altered his pain medications out of retaliation for grievances Powell filed against them. The Supreme Court has held, however, that there is no *Bivens* action for a federal official's retaliation for exercising a First Amendment right. *See Egbert,* 142 S. Ct. at 1807. Even before *Egbert,* Courts of Appeals were reaching a similar conclusion in this, and other, First Amendment contexts. *See, e.g., Doe v. Meron*, 929 F.3d 153, 167-70 (4th Cir. 2019); *Vega v. United States*, 881 F.3d 1146 (9th Cir. 2018). *But see Smadi v. True, et al.,* 783 F. App'x 633 (7th Cir. 2019) (requiring briefing on whether a court might recognize a First Amendment claim for damages under *Bivens* prior to dismissal). And, "[n]ationwide, district courts seem[ed] to be in agreement that, post-*Abbasi,* prisoners

7

have no right to bring a *Bivens* action for violation of the First Amendment." *Harris v. Dunbar*, Case No. 17-cv-536-WTL, 2018 WL 3574736, at *3 (S.D. Ind. July 25, 2018) (citations omitted). Thus, it is now clear that "recognizing a First Amendment retaliation claim would be an extension of *Bivens* into a new context." *Sargent v. Barfield,* Case No. 19 cv 50187, 2021 WL 2473805, at *2 (N.D. Ill. June 17, 2021).

The Court further finds special factors preclude expansion of *Bivens* to Powell's First Amendment claims. As has been recognized in this district, Powell has other avenues of relief through the prison's administrative remedies program. *See Flournoy v. Sproul*, Case No. 22-cv-10-JPG, 2023 WL 1069293, at *3 (S.D. Ill. Jan. 27, 2023) ("[t]his alternative remedy need not match the scope of relief available under *Bivens*"). Additionally, recognizing an implied damages remedy for retaliation claims would come at substantial costs to the public and individual governmental staff. *Egbert,* 142 S. Ct at 1807. As the Supreme Court observed:

> A plaintiff can turn practically any adverse action into grounds for a retaliation claim. And, "[b]ecause an official's state of mind is easy to allege and hard to disprove, insubstantial claims that turn on [retaliatory] intent may be less amenable to summary disposition." *Crawford-El v. Britton*, 523 U.S. 574, 584-85 (1998). Even a frivolous retaliation claim "threaten[s] to set off broad-ranging discovery in which there is often no clear end to the relevant evidence." *Nieves v. Bartlett,* 139 S. Ct. 1715, 1725 (2019) (internal quotation marks omitted). "[U]ndoubtedly," then, the "prospect of personal liability" under the First Amendment would lead "to new difficulties and expense." *Schweiker v. Chilicky*, 487 U.S. 412, 425 (1988).

*Id.* Therefore, "Congress is in a better position to decide whether or not the public interest would be served by imposing a damages action." *Id.* (citations and quotations excluded). Due to these special factors counseling hesitations in the expansion of *Bivens*, Powell's claim that Defendants retaliated against him for exercising his First Amendments rights is dismissed with prejudice.

**Count 2**

The Court finds that Powell's claim against Dr. Ahmed, Nurse Brown, PA Mills, Nurse Kelley, and Ms. Brazzell in Count 2 are not, at least at the pleading stage, meaningfully different from *Carlson v. Green*, 446 U.S. 14 (1983), in which the Supreme Court recognized an implied damages remedy for an Eighth Amendment deliberate indifference claim. To state a claim based on deficient medical care, a plaintiff must plead that he (1) suffered from an objectively serious medical condition, and (2) an official's deliberate indifference to that condition. "A prison official acts with deliberate indifference when he knows of and disregards an excessive risk to inmate health or safety." *Cesal v. Moats,* 851 F. 3d 714, 722 (7th Cir. 2017).

Here, Powell states a viable claim against Dr. Ahmed, Nurse Brown, PA Mills, Nurse Kelley, and Ms. Brazzell for the treatment of his various conditions including his colitis, pain in his left knee, left hip, left shoulder, and lower back, and nickel allergy. At this stage, the Court finds that Powell's claims do not represent an explicate departure from the claims in *Carlson*. But to the extent Powell alleges that Dr. Ahmed and/or Ms. Brazzell failed to properly supervise their staff (Doc. 1, p. 13-14), that specific claim cannot proceed. "[A] defendant cannot be liable under *Bivens* on the basis of *respondeat superior* or supervisory liability." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011). Powell may, however, proceed against Dr. Ahmed and Ms. Brazzell for their personal participation in the care Powell received.

**<u>Pending Motions</u>**

In addition to his Complaint, Powell recently filed a motion for injunctive relief and/or intervention to order expedited medical care (Doc. 15). His motion seeks expedited

9

care for all of his conditions. Powell indicates that he was recently transferred to a halfway house. Prior to his transfer, Powell alleges he was recommended for surgery to remove the nickel implants from spinal surgery but has not been able to schedule a referral for his medical needs since his transfer. He alleges that the director of the residential recovery center where he is currently housed, Peter Milosovich, informed Powell his conditions were routine and did not warrant urgent referrals (*Id.* at p. 4). Powell seeks assistance from the Court in obtaining medical care.

Simply put, Powell is not entitled to injunctive relief in this case for care he is currently receiving at his halfway house. Powell is no longer at FCI - Greenville and none of the defendants are currently providing him with care. To the extent that he believes individuals at his new facility, a halfway house in Tacoma, Washington, are failing to provide him with proper medical care he would need to file a new lawsuit against those individuals. The current care he is receiving at his halfway house is not part of this lawsuit. His claim in this case only focuses on the care he was provided by individuals at FCI – Greenville. Thus, his motion for a preliminary injunction is **DENIED**.

## Disposition

For the reasons stated above, Powell's deliberate indifference claim in Count 2 shall proceed against Dr. Ahmed, Nurse Brown, PA Mills, Nurse Kelley, and Ms. Brazzell. Powell's retaliation claim in Count 1 is **DISMISSED with prejudice**.

The Clerk of Court shall prepare for Defendants Dr. Ahmed, Nurse Brown, PA Mills, Nurse Kelley, and Ms. Brazzell: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to the

defendants' place of employment as identified by Powell. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Powell, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Powell, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Powell is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **seven days** after a transfer or other change in address occurs. Failure to comply with this

order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  May 4, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**